**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**ADMINISTRATIVE ORDER 2023-50**
**CASE NO. 23-MC-21662**

IN RE:  **LARRY ELLIOT KLAYMAN**
             **FLORIDA BAR # 246220**

_____/

FILED BY____CW____D.C.

**Jul 24, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIA

## ORDER

On September 15, 2022, the District of Columbia Court of Appeals (DCCA) entered an Order of Suspension, suspending Larry Elliot Klayman from the practice of law for eighteen (18) months.   *See In re Klayman*, 282 A.3d 584 (D.C. 2022) [ECF No. 1].   The Clerk served Mr. Klayman by certified mail with an Order to Show Cause why this Court should not impose the same discipline, accompanied by the DCCA's Order of Suspension.   (*See* [ECF No. 2]).   On June 12, 2023, Mr. Klayman filed a Motion to Stay Proceedings [ECF No. 5] and a Response to Order to Show Cause [ECF No. 4].   The Court addresses both.

Motion to Stay Proceedings

In the Motion, Mr. Klayman seeks a stay of these reciprocal disciplinary proceedings pending his challenges to and the adjudication of the DCCA's suspension order in *In re Klayman*, 20-BG-583 (D.C.C.A.) (the "Suspension Order") following a complaint filed in the District of Columbia Superior Court under D.C. Superior Court Civil Rule 60, in *Klayman v. Sataki et al.*, 22-CAB-5235 (D.C. Sup. Ct.) (the "Rule 60 Complaint").   (*See* [ECF No. 5] 1).

Under Rule 8(c) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, Local Rules of the United States District Court for the Southern District of Florida, reciprocal discipline may be delayed where state proceedings are stayed.[1]   Such is not

---

[1] "In the event that the discipline imposed in the other jurisdiction has been stayed there, any reciprocal

the case here.   Regardless of the process yet to be afforded to Mr. Klayman, he was and is currently suspended by Order of the DCCA pending further proceedings.   Without evidence that the DCCA Order of Suspension has been stayed, this Court may proceed with reciprocal discipline.

Response to Order to Show Cause

In considering Mr. Klayman's Response to the Order to Show Cause, some background regarding the governing rules is appropriate.   Rule 8(e) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, Local Rules of the United States District Court for the Southern District of Florida establishes the procedures for reciprocal discipline following a final adjudication by another court and the grounds upon which reciprocal discipline may be contested.   Under Rule 8(e),

> (e) A final adjudication in another court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purpose of a disciplinary proceeding in this Court, unless the attorney demonstrates that the Court is satisfied that upon the face of the record upon which the discipline in another jurisdiction is predicated it clearly appears that:
>
> > (1) the procedure in that other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> >
> > (2) there was such an infirmity of proof establishing misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
> >
> > (3) the imposition of the same discipline by this Court would result in grave injustice; or
> >
> > (4) the misconduct established is deemed by this Court to warrant substantially different discipline.

*Id.*

In his Response, Mr. Klayman asserts three main arguments in contesting reciprocal

---

disciplinary proceedings instituted or discipline imposed in this Court shall be deferred until such stay expires."   Rule 8(c).

discipline:

1. Relying on the doctrine of laches and the statute of limitations, Mr. Klayman claims there was a significant deprivation of due process rights in that the underlying matter occurred seven years before the date the DCCA imposed discipline.   (*See* [ECF No. 4] 9–15).

2. Mr. Klayman states the imposition of reciprocal discipline would result in a grave and manifest injustice in that the DCCA summarily, and based on partisan politics, adopted the District of Columbia Board on Professional Responsibility's Report and Recommendation.   (*See id.* at 15–26).

3. Mr. Klayman asserts there is no clear and convincing evidence of any misconduct.   (*See id.* at 26–37).

As to the first argument, the review of a due process challenge under Rule 8(e)(1) requires an attorney to demonstrate that the disciplining court denied the attorney notice or an opportunity to be heard.   Mr. Klayman raises his due process argument under the doctrine laches and the statute of limitations.   He makes no effort to show he was not furnished notice or the ability to present evidence and argument.   Thus, the "due process" argument fails to persuade.

Mr. Klayman's second contention presumably relies on Rule 8(e)(3).   Rule 8(e)(3) allows an attorney to rebut the conclusive presumption of "misconduct for purpose of a disciplinary proceeding in this Court" with evidence that shows reciprocal discipline "would result in grave injustice[.]"   *Id.* (alteration added).   Mr. Klayman claims the District Court of Appeals acted in "a partisan punitive fashion," rather than address whether the punishment fits the misconduct or describe what "grave injustice" would result.   ([ECF No. 4] 16).   Again, this argument misses the mark and is unavailing.

In his third point, Mr. Klayman asserts that the determination of misconduct is not supported by clear and convincing evidence.   Under Rule 8(e)(2), the attorney must clearly show "there was such an infirmity of proof establishing misconduct as to give rise to the clear conviction that this Court could not . . . accept as final the conclusion on that subject[.]"   *Id.* (alterations

3

added).   In the Order of Suspension, the DCCA found that numerous disciplinary violations cited by the Board on Professional Responsibility were "supported by the record."   ([ECF No. 1] 17). Furthermore, the DCCA found that many of Mr. Klayman's challenges rested on his "version of the facts," but that there was "substantial evidence" to support the Board's findings of rule violations.   (*Id*. at 19–20).

Mr. Klayman attacks each basis for discipline in varying degrees, but he fails to show an "infirmity of proof" or establish that the facts relied on by the DCCA do not substantiate the findings of misconduct.   The Court explains.

*Failure to Abide by Client's Wishes*

Rule 1.2(a) of the District of Columbia Rules of Professional Conduct requires a lawyer to "abide by a client's decisions concerning the objectives of representation" and to "consult with the client as to the means by which they are to be pursued."   *Id.*   According to the DCCA, the Board on Professional Responsibility found that Mr. Klayman "violated this rule in two ways: by seeking publicity contrary to [Mr. Klayman's client,] E.S.'s wishes and by refusing to dismiss the BBG lawsuit as E.S. directed."   ([ECF No. 1] 22 (alteration added)).   The DCCA agreed "with the Board's conclusion on the latter point and therefore . . . [saw] no need to address the first."   *Id.* (alterations added).

Mr. Klayman attacks the first violation, regarding "publicity," providing numerous examples of his client's testimony as well as several other witnesses.   ([ECF No. 4] 26-31).   This argument is unavailing, as the DCCA itself stated it did not rely on this reason because it agreed with the Board's conclusion on the latter point — refusing to dismiss the BBG lawsuit, contrary to his client's instructions.   (*See* [ECF No. 1] 22).   As to the attorney's refusal to dismiss the BBG lawsuit, Mr. Klayman offers a paragraph in defense, in which he asserts he had no political

goal in not dismissing the BBG lawsuit.   ([ECF No. 4]) 31).   This argument does not refute the basis for the violation, which was that Mr. Klayman refused to dismiss the BBG lawsuit contrary to his client's wishes.   Indeed, the DCCA cited evidence of the client's wishes to dismiss the BBG case without any reference to a political motivation.   (*See* [ECF No. 1] 22-23).

### *Conflict of Interest*

Rule 1.7(b)(4) of the District of Columbia Rules of Professional Conduct prohibits a lawyer from representing a client with respect to a matter if "[t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interest in a third party or the lawyer's own financial, business, property, or personal interests."   *Id.*   E.S. testified that "she terminated Mr. Klayman's representation in part because he was not able to act professionally towards her and his contacts with her had become abusive." ([ECF No. 1] 21).   The DCCA determined that Mr. Klayman had "strong feelings" for his client, and these feelings "did adversely affect his representation of E.S."   (*Id*. at 20-21).

Mr. Klayman asserts that simply having an "emotional interest" in a client, especially where "there was no sexual component to the relationship," does not constitute an ethical violation. ([ECF No. 4] 32).   Mr. Klayman states that his client is the one who became "abusive" during his representation of her, and he is the one who asked her to seek other counsel.   (*Id*. at 33).   Merely providing an alternative explanation of the record does not refute the DCCA's conclusion or indicate an infirmity of evidence.

### *Revealing and Using Client Secrets*

Rules 1.6(a)(1) and (a)(3) of the District of Columbia Rules of Professional Conduct, respectively, prohibit a lawyer from knowingly "reveal[ing] a confidence or secret of the lawyer's client" or "us[ing] a confidence or secret of the lawyer's client for the advantage of the lawyer or

of a third person." *Id.* (alterations added).   The DCCA found that "Mr. Klayman's publicity campaign resulted in the public disclosure of confidential information" about his client, and he did not obtain his client's "informed consent;" rather, the client "acquiesced" to the publicity.   ([ECF No. 1] 23).   Mr. Klayman refers to the argument he used to contest the finding that he failed to abide by his client's wishes, specifically that his client approved of and participated in the publicity surrounding her case.   (*See* [ECF No. 4] 35).   Again, Mr. Klayman's contention does not point to a lack of evidence — only a different view of the evidence.

*Explaining Matters to Client*

Rule 1.4(b) of the District of Columbia Rules of Professional Conduct directs that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* (alteration added).   The DCCA found a violation of this Rule based on evidence of Mr. Klayman's "barrage of communications with E.S. about his feelings" which "'drowned out' any legitimate communications about E.S.'s case." ([ECF No. 1] 25).   The DCCA also cited to the Hearing Committee's findings of specific instances where Mr. Klayman "did not consult with E.S. before taking important steps in the litigation, including filing the motion to disqualify the district-court judge."   (*Id.*).

As for the motion to disqualify, Mr. Klayman asserts that he did not need an informed consent from his client to file the motion and regardless, that his client was "fully informed of this motion and did not object."   ([ECF No. 4] 35).   Furthermore, Mr. Klayman makes the conclusory assertion that his client was informed of his strategy and actions every step of the way, without providing concrete examples from the record.   (*See id.*).   This is insufficient.

*Absence of Written Fee Agreement*

Rule 1.5(c) of the District of Columbia Rules of Professional Conduct requires, in part, that

6

"[a] contingent fee agreement shall be in writing."   *Id.* (alteration added).   The DCCA considered both the client's testimony and Mr. Klayman's before determining there was a contingent fee agreement, crediting the client's testimony "over Mr. Klayman's on this point, particularly given the email that Mr. Klayman sent demanding a contingent fee."   ([ECF No. 1] 26).   Mr. Klayman does not address this finding other than to claim that there was no contingent fee, as he was representing his client "free of charge."   ([ECF No. 4] 35–36).   This argument is conclusory and fails to refute the evidence cited by the DCCA.

*Failure to Cease Representation*

Rule 1.16(a)(3) of the District of Columbia Rules of Professional Conduct states that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation if: . . . The lawyer is discharged."   *Id.* (alteration added).   According to the DCCA, Mr. Klayman "acknowledges that he continued to take action in E.S.'s case even after she discharged him as her lawyer," and it discredited Mr. Klayman's assertion that he did not believe his client wanted his representation to stop or that the communication he did receive to stop representation came from someone other than his client.   ([ECF No. 1] 27).   Mr. Klayman insists that he only continued to represent his client to preserve her appellate rights, and letters terminating the representation were sent to the incorrect address.   (*See* [ECF No. 4] 36).   Like the earlier arguments, Mr. Klayman makes conclusory assertions without refuting the evidence supporting the DCCA's finding.   *See In re Kramer*, 282 F.3d 721, 727 (9th Cir. 2002) (where the court found attorney's "conclusory assertions of insufficient proof . . . insufficient to show" that the disciplining court's conclusions were based upon an infirmity of proof. (alteration added)).

Rule 8(d) provides that after expiration of the time for submitting a response to an order to show cause, "the Court may impose the identical discipline or may impose any other sanction the

Court may deem appropriate." *Id.* Given this background, pursuant to Rule 8(d) and the Court's inherent power to regulate membership in its bar for the protection of the public interest, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (noting "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it"),

**IT IS ORDERED** that Mr. Klayman's Motion to Stay Proceedings is **DENIED**.

**IT IS FURTHER ORDERED** that Mr. Klayman is suspended from practice in this Court, effective immediately.   Mr. Klayman may not resume the practice of law before this Court until reinstated by order of the Court.   *See* Rule 12(a).   The Clerk of Court shall strike this attorney from the roll of attorneys eligible to practice in the United States District Court for the Southern District of Florida and shall also immediately revoke the attorney's CM/ECF password.

**IT IS FURTHER ORDERED** that the Clerk of Court shall attempt to serve by certified mail a copy of this Order of Suspension upon Mr. Klayman at his court record and Florida Bar addresses.   Mr. Klayman shall forthwith advise the Clerk of Court of all pending cases before the Court in which he is counsel or co-counsel of record.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of July, 2023.


**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**


c:      All South Florida Eleventh Circuit Court of Appeals Judges
        All Southern District of Florida District Judges, Bankruptcy Judges, and Magistrate Judges
        United States Attorney
        Circuit Executive
        Federal Public Defender
        Clerks of Court – District, Bankruptcy, and 11th Circuit
        Florida Bar and National Lawyer Regulatory Data Bank

Library
Larry Elliot Klayman